E. J. BUCK and Muriel F. Buck,
Plaintiffs in Error,

v.

DEL CITY APARTMENTS, INC., a corpora-
tion, and Felbur Hoyt Sitton and Mildred
Sitton, Defendants in Error.

No. 41165.

Supreme Court of Oklahoma.

March 28, 1967.

Charles W. Stubbs, Welcome D. Pierson, Bliss Kelly, Oklahoma City, for plaintiffs in error.

Duke Duvall, Duvall & Head, Oklahoma City, for defendant in error Del City Apartments, Inc.

Pierce, Nock, Duncan, Couch & Hendrickson, by Calvin W. Hendrickson, Oklahoma City, for defendants in error Felbur Hoyt Sitton and Mildred Sitton.

McINERNEY, Justice.

This was a consolidated action by husband and wife. Recovery was sought for her injury, his loss of consortium and for medical expenses. The injury which occasioned the litigation happened January 6, 1960, at the premises in Del City operated as "Del Motel". The wife fell after she slipped on ice upon the steps in front of the cabin she and her husband were occupying. The trial ended in judgment sustaining a demurrer to plaintiffs' evidence.

Our task here is to decide whether the wife, when injured, was on the premises as a tenant or as a guest of the motel; to define, on the basis of the status found to exist, the applicable duty owed to her; and to determine if the evidence, when measured by the standard of care properly to be applied, shows the breach of any legal duty owed to her.

The place where the accident occurred consists of a number of small cabins, each having a separate front entrance with a porch and two concrete steps leading from it to a short walkway. Access to each cabin may be gained through the main walkway on the property. Operated under a state license "as a hotel or motel", the premises are situated "in the forty some-odd hundred block on Southeast 29th Street". There is a large sign in front which identifies the property as the Del Motel. At the entrance to it there is an office at which prospective patrons register. At the time of the injury the property was managed, supervised and attended to by the two individual defendants. They held it under a lease from the corporate defendant "for the operation of a motel". Accommodations offered to the public were on a daily basis. Maid service was available. Except for a two-week vacation trip, plaintiffs had lived at the Del Motel since November 17, 1959, the date their home burned

down. They occupied an entire cabin, paying for its use on a weekly basis.

Plaintiffs assert the wife, when injured, was a guest at the motel. To a guest, they claim, the innkeeper owes a "high" degree of care in maintaining the hotel premises for their safe use. Cited as authority for this statement of the law is our decision in Mayo Hotel Co. v. Danciger, 143 Okl. 196, 288 P. 309. In the alternative, plaintiffs urge that if the wife was not a guest, but a tenant, her injury took place upon that portion of the premises characterized as "common approaches or passageways". These portions, plaintiffs insist, the landlord is under a duty to maintain in a reasonably safe condition for the use of his tenants. In support of this argument we are cited to Price v. Smith, Okl., 373 P.2d 242, 244.

■ Defendants counter that the wife's injury occurred while she was descending from the porch to the short walkway in front of the cabin. This area, they claim, was "under plaintiffs' exclusive control" as the sole occupants of the cabin, and there the defendants owed no legal duty to her. Invoked to buttress this contention is the familiar rule that, absent fraud, concealment, deceit or an express covenant of warranty of fitness for human habitation, the landlord is not liable to a tenant (or to the members of his family) for injuries due to the defective condition or faulty construction of the demised premises, where by the terms of the lease the control over such premises passed "entirely and exclusively" to the tenant. See Godbey v. Barton, 184 Okl. 237, 86 P.2d 621, 622.

■ The relation of landlord and tenant cannot arise without a contract, express or implied, "granting" to the tenant the "exclusive possession" of property for a specified term. The exclusive possession so granted is an indispensable ingredient of an "estate". Not every physical occupant of land has an estate in it. For example, one who occupies a seat, even a reserved one, at the theatre or elsewhere, holds merely a license, not an estate. Ten-

ancy does necessarily create an estate in its holder, but the duration thereof may, of course, greatly vary; it may be for years, at will or from period to period. Howard v. Manning, 79 Okl. 165, 192 P. 358, 12 A.L.R. 819.

■ The chief distinction between a tenant and an innkeeper's guest lies in the element of possession. A tenant is deemed to have exclusive legal possession of the demised premises and stands responsible for their care and condition. A guest, on the other hand, has merely a right to the use of the premises while the innkeeper retains his control over them, is responsible for the necessary care and attention and retains the right of access for such purpose. Modern law tends to regard as a guest anyone who is a patron of the inn as such, and receives the same treatment as that accorded to short-term guests. Leon v. Kitchen Bros. Hotel Co., 134 Neb. 137, 277 N.W. 823, 115 A.L.R. 1078; Cottmire v. 181 East Lake Shore Drive Hotel Corp., 330 Ill.App. 549, 71 N.E.2d 823; See, Tenant, Lodger and Guest, 64 Yale L.J. 391, 396.

■ The status of a patron upon the premises as a tenant or as a guest is to be determined, inter alia, from the terms of the contract between the parties; the character of the premises; the nature of the business operated upon them; the extent of control or supervision maintained by the proprietor or possessor over the premises; the manner the premises are operated; the character of the part occupied by the patron; and the character of use to which the premises are generally adapted and devoted. Marden v. Radford, 229 Mo.App. 789, 84 S.W.2d 947.

■ The operation and management of the property as a motel under a license from the state and its advertising as a motel by the display of a highway sign afford a proper basis for the inference that the patron of the establishment is a guest. Marden v. Radford, supra. One who maintains a motel for the purpose of furnishing lodging accommodations to the public sustains to

his occupants the relation of innkeeper. Crockett v. Troyk, Tex.Civ.App., 78 S.W. 2d 1012; 29 Am.Jur., Innkeepers, Sec. 28, p. 26.

Neither the length of the stay nor the fact that payment for the accommodation is made at a fixed rate per week rather than per day and that for the time the hotel may be the patron's only home precludes him from occupying the status of a guest in relation to the hotel establishment. Levesque v. Columbia Hotel, 141 Me. 393, 44 A.2d 728; Driskill Hotel Co. v. Anderson, Tex.Civ.App., 19 S.W.2d 216; Hart v. Mills Hotel Trust, 144 Misc. 121, 258 N.Y.S. 417; 29 Am.Jur., Innkeepers, Sec. 21, p. 21.

From the uncontroverted facts in the record, measured by the legal test to be employed, it is manifest that the injured wife's status in relation to the motelkeepers was that of guest and innkeeper.

At common law the innkeeper was not an insurer of his guests' personal safety upon the premises, although by the prevailing view he was liable as an insurer of all personal goods of a guest brought within the inn (unless the loss happened by the act of God or a public enemy, or by the fault or negligence of the guest himself). 43 C.J.S. Innkeepers § 22, p. 1173; 43 C.J.S. Innkeepers § 15, p. 1156.

The Oklahoma law of innkeeper's liability for goods of the guest varies but slightly from the common-law norm. 15 O.S.1961, Sec. 501; Abercrombie v. Edwards, 62 Okl. 54, 161 P. 1084; Park-O-Tell Co. v. Roskamp, 203 Okl. 493, 223 P.2d 375. The innkeeper's duty to protect his guest from injury due to the defective condition of the premises is, however, governed in Oklahoma by the rule of common law. As this court held in Sullins v. Mills, Okl., 395 P.2d 787, the owner or operator of a motel is not an insurer of the safety of a customer who uses the premises, but only owes the duty to maintain the premises in a reasonably safe and suitable condition. The degree of care so cast upon him remains utterly unaltered by those statutes which,

under the police power of the state, regulate hotels and rooming houses and require their inspection and licensing. Ford v. Burden, Okl., 276 P.2d 925, 927; see 63 O.S.1961, Sec. 339, repealed by the Public Health Code of 1963, S.L.1963 c. 325; see also Criswell v. Bankers' Mortgage Co., 128 Kan. 609, 278 P. 722.

Our law appears to be in harmony with the weight of authority in the United States. According to the prevailing view, innkeepers are not insurers of the safety of their guests. Their duty is discharged by the exercise of ordinary or reasonable care for the guests' safety. In other words, the degree of care to which a hotel guest is entitled in this regard is the same as that applicable to invitees. Sullins v. Mills, supra; 29 Am.Jur., Innkeepers, Sec. 57, pgs. 45, 46; see annotation in 58 A.L.R.2d 1201, 1203.

We are not unmindful of our pronouncement in Mayo Hotel Co. v. Danciger, supra, where we held that an innkeeper while not an insurer of the personal safety of his guests, "nevertheless is held to a *very high degree of care* to protect them against assaults, insults, and negligent acts of servants * * *." (emphasis ours). The Danciger case did not involve an injury occasioned by a defect in the premises, but one inflicted in the course of an assault by a servant of the hotel. We need not determine here whether this distinction does afford a proper basis for applying a different standard of care. It suffices to say that our holding in the Danciger case is not the correct exposition of our law of innkeeper's liability for injury from defects in the premises, and, insofar as our opinion in that case may be thought applicable to such liability, it is hereby expressly disapproved.

We next pass to examine the evidence to determine if a breach of any legal duty owing to the wife was shown.

Following their Florida vacation, plaintiffs returned to Del Motel about January 4, 1960. A heavy snow fell the following

day and night. It remained on the ground on January 6th, the day of the injury, covering the motel premises and the roof of plaintiffs' cabin. In the mid-day of that day one of the individual defendants (who was a co-lessee and co-manager of the motel) cleaned the snow off the walkway, steps and the porch in front of plaintiffs' cabin.

The wife stayed inside until the evening that day, but the husband went out through the back door during early morning "to take the dog out". At 5:00 or 6:00 o'clock plaintiffs both left the cabin "to go out and eat". Preceding her husband, the wife went out on the porch, stepped aside to allow him to close the cabin door and then proceeded on the porch "to go down the steps" to the walkway. While there she was well able to see. When one of her feet had left the porch level she slid on the concrete step and fell bouncing down. She landed "(A)t the bottom of the steps lying on the right side in the snow * * *." As this occurred ice was present on the steps and on the outer edge of the porch. She claims she did not see the presence of the ice before she fell although the porch light was very adequate and "if it was dark that evening, the light would have been turned on".

As she went out that evening she was aware of the freezing temperature or of the cold weather. She was also cognizant that "(T)here (were) * * * no eaves, troughs and drains around the roof * *" of the cabin porch, and when the snow melted the afternoon of the day she was injured, the water dripped off and drained down onto the porch steps. The day before she was injured there had been no ice either on these steps or on the outer edge of the porch. Neither she nor her husband knew how long the ice had been present on the steps that day. So far as she knew, it "could have been (there) ten minutes or * * * an hour * * *".

■■■ The owner or person in charge of the premises has no obligation to warn an invitee, who knew or should have known the condition of a property, against patent and obvious dangers. The invitee assumes all normal or ordinary risks incident to the use of the premises, and the owner or occupant is under no legal duty to reconstruct or alter the premises so as to remove known and obvious hazards, nor is he liable to an invitee for an injury resulting from a danger which was obvious and should have been observed in the exercise of ordinary care.

■■■ The duty to keep premises in a reasonably safe condition for the use of the invited public applies solely to defects or conditions which may be characterized as in the nature of hidden dangers, traps, snares, pitfalls, and the like—things which are not readily observable. The law does not require the owner or occupant of land to warrant that the invitee shall suffer no injury upon the premises; his duty is discharged when reasonable care is taken to prevent the invitee's exposure to dangers which are more or less hidden, and not obvious. In the absence of a duty neglected or violated, there can be no actionable negligence. Beatty v. Dixon, Okl., 408 P.2d 339; Herndon v. Paschal, Okl., 410 P.2d 549; Sullins v. Mills, supra; Pruitt v. Timme, Okl., 349 P.2d 4.

■■■ It is clear from the evidence that the wife knew or should have known of the general weather conditions. The dangers from them are universally known and were equally as apparent to her as they were to the motelkeepers. There is no evidence here that the usual hazard from the icy condition was in any way increased by an act of the motelkeepers. Where there is no act on the part of the owner or occupant of the premises creating a greater hazard than that brought about by natural causes, dangers created by the elements, such as the forming of ice and the falling of snow, are universally known, and all persons on the property are expected to assume the burden of protecting themselves from them. Sullins v. Mills, supra; see

also Hallett v. Furr's, Inc., 71 N.M. 377, 378 P.2d 613; Forbes v. Ruff, 72 N.M. 173, 381 P.2d 960; Carter v. Davis, 74 N.M. 443, 394 P.2d 594.

In short, mere slipperiness of snow or ice in its natural state and accumulations does not give rise to liability. Plaintiffs' argument is based on authorities from jurisdictions which have modified the traditional common-law view. These authorities are not persuasive to us. We accordingly decline plaintiffs' invitation to change the law of this state. See annotation in 26 A.L.R.2d 610. As plaintiffs' evidence does not show any "duty violated or neglected", there was no error in sustaining the demurrer to their evidence.

Affirmed.

All the Justices concur.